---

In re RONK.

(District Court, D. Indiana. October 23, 1901.)

No. 914.

BANKRUPTCY—LIENS—MORTGAGE EXECUTED PURSUANT TO PRIOR AGREEMENT.
A chattel mortgage executed by an insolvent within four months prior to his bankruptcy to secure in part a past loan is not rendered a valid lien as to such past consideration because of an agreement to execute it when the loan was made, when it would otherwise be voidable as a preference under Bankr. Act 1898; and especially where, by the laws of the state, if the mortgage had been executed at the time the loan was made, but not recorded until the time it was actually executed, it would have been void as to other creditors.

In Bankruptcy.

Harvey, Pickens, Cox & Kahn, for creditors.

Crane & Anderson, for Mary A. Ronk.

BAKER, District Judge. This is a petition to review the order of the referee adjudging a chattel mortgage executed when the bankrupt was insolvent, and within four months of the adjudication, to be a valid and preferential lien over the claims of other creditors. The mortgage secures two notes,—one of $750 and one of $350,—with interest; each bearing date November 14, 1900, and falling due in one year thereafter. The bankrupt is a householder, and entitled to an exemption of $600 under the statutes of the state. His entire estate above his exemption does not exceed the sum of $800, so that, if the mortgage is a valid preferential lien, other creditors of the bankrupt equally meritorious will receive nothing. The mortgagee is the mother of the bankrupt, who, with his wife, lives in the same house

with his mother. That the mortgage would be invalid, except to the extent of $100 advanced on the day the mortgage was executed, is not and cannot be seriously questioned, in the absence of the facts about to be mentioned. It is earnestly insisted, however, that the mortgage constitutes a valid lien, because at the time the loan was agreed to be made the bankrupt promised and agreed to give his mother a chattel mortgage on all the goods, wares, and merchandise in his store, and also on all his after-acquired goods, wares, and merchandise, to secure the loan of $1,100. On November 14, 1900, the mortgagee agreed to loan her son $1,100, to be repaid within one year; and on that day she advanced to him $750 on account of the loan, and agreed to advance the remaining $350 from time to time as she might be able to do so. I find no evidence in the record to show when or within what time the balance of the loan was to be paid to the bankrupt. The $350 was actually paid as follows: On December 12, 1900, $100; on February 15, 1901, $45; on February 18, 1901, $55; on March 7, 1901, $50; and on March 29, 1901, $100. On the last-named day the bankrupt executed his note to his mother for $350, dated November 14, 1900, and falling due one year after date, and at the same time executed the chattel mortgage in question to secure the payment of these two notes. No time was ever agreed upon, either on November 14, 1900, or at any other time, when the $350 should be paid. The testimony is that the mother was to pay it as she might be able to collect it from certain claims owing to her. The evidence does not show whether the mortgage was to be made at such time as the mother might request it, or whether it was to be made contemporaneously with the last payment. The time within which the $350 was to be paid was never agreed upon, nor was any time agreed upon when the mortgage should be executed.

Does the verbal agreement made on November 14, 1900, to give the mother a chattel mortgage, under the circumstances above stated, constitute such claim or lien as to render the mortgage thereafter executed in pursuance of it a valid preferential security? The statute of this state (section 4913, Rev. St. Ind. 1881) enacts:

"No assignment of goods by way of mortgage shall be valid against any other person than the parties thereto where such goods are not delivered to the mortgagee or assignee and retained by him, unless such assignment or mortgage shall be acknowledged as provided in case of deeds of conveyance and recorded in the recorder's office of the county where the mortgagor resides, within ten days after the execution thereof."

If the mortgage had been executed on November 14, 1900, and had not been recorded until March 29, 1901, manifestly it would have been invalid as against creditors. It is difficult to perceive how, in view of this statute, a secret claim or equity can be held to have been created by the verbal agreement, when a mortgage or assignment actually executed by the parties at that time, if unrecorded, would have been invalid as against creditors. It is apparent that it was the purpose of the legislature to allow no valid claim, lien, or secret equity to be created on goods unless public disclosure was made either by delivery of the goods to the assignee or mortgagee and the retention thereof by him, or by recording the assignment or mort-

gage within 10 days. To hold otherwise would be to defeat the beneficial effect of the recording statute. Section 67, cl. "a," of the bankruptcy act, provides:

"Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt, shall not be liens against his estate."

It cannot be successfully maintained that the verbal agreement created a valid lien as against the claims of the creditors; and, if it did not create a valid lien, then, by the terms of the bankruptcy act, it cannot be enforced as a lien entitled to priority over other claims. It created no lien,—nothing but a secret equity, possibly good as between mother and son, but certainly not valid and enforceable to the prejudice of the claims of creditors. The bankruptcy act embraces payments for the purpose of giving preferences, as well as the giving of securities for such purpose; and it would hardly be contended that a preference by way of payment, otherwise invalid, would be valid because the debtor had agreed at the time it was contracted to pay the debt, without defalcation, on a specified day. The doctrine contended for by the mortgagee would necessarily invite and inevitably lead to the defeat of the bankruptcy act. It would be easy in every case where it was desired to thwart the operation of the law and to give a preference to a relative or a friend to make an agreement at the time the money was loaned or the credit given for a mortgage to be executed in the future. If the law can be thus evaded, it would be an open invitation to every person loaning money or giving credit to the bankrupt to enter into such a verbal agreement with him. Such agreements, if held valid, would create secret liens upon the bankrupt's property, and would enable him in every case to effect the very objects which it was the purpose of the bankruptcy act to prevent. Such agreements would undoubtedly be made in every case where the debtor wished to secure relatives and friends to the detriment of his other creditors. It would be a standing invitation to perjury, and would defeat the declared policy and purpose of our state legislation, as well as the policy and purpose of the bankruptcy act. I have examined all the cases cited by counsel for the respective parties, but it seems to me that it would serve no useful purpose to enter upon a review of them. It is sufficient to say that they are not in entire harmony.

The order of the referee must be reversed, with directions to enter an order allowing the claimant a preferential lien to the extent of $100, with interest from March 29, 1901, and to disallow the residue of the mortgage as a preferential lien; and if the claimant shall within 15 days surrender said mortgage, except to the extent above indicated, then the residue of her claim shall be allowed without preference, to be paid pari passu with the claims of other creditors; and, if she fails to surrender as above required, then her claim is to be expunged, except to the extent above allowed.