[No. 27144. Department One. July 11, 1938.]

C. E. PHILIP, *Appellant,* v. THE CITY OF SEATTLE, *Defendant,* BRUCE BARTLEY, *as Trustee in Bankruptcy, Respondent.*[1]

*DuPuis & Ferguson,* for appellant.

*Jerome K. Kuykendall,* for respondent.

GERAGHTY, J.—Plaintiff's amended complaint alleged that, on July 6, 1937, the city of Seattle, defendant, was indebted to H. A. Bechtel & Son, copartners, in the sum of $808.93, for sand and gravel sold and delivered;

[1]Reported in 81 P. (2d) 279.

and that, on that date, the partnership, for a good and valuable consideration, assigned, in writing, the indebtedness to the plaintiff. Copies of three assignments, aggregating the amounts sued for, were attached to the complaint. The assignments identified the funds assigned by reference to the numbers of the requisitions issued by the purchasing department of the city.

The city answered setting up the existence of adverse claims to the fund owing to Bechtel & Son, and alleging that it disclaimed any further interest in the fund and stood ready and willing to abide by the action of the court thereon.

Bruce Bartley, as trustee in bankruptcy of Bechtel & Son, intervened in the action and set up a claim, as trustee, to the fund, alleging that the partnership was adjudged bankrupt October 15, 1937; that, at the time the assignments were made, the partnership was insolvent, a fact the plaintiff had reasonable cause to believe; and that the enforcement of the assignment would effect an unlawful preference.

To the complaint in intervention, the plaintiff answered that, on May 15, 1937, Bechtel & Son assigned to him one thousand dollars due them from N. Fiorito, Inc.; that, on June 11, 1937, the plaintiff released this assignment and accepted, in its stead, a parol assignment of an equivalent amount of money owing from the defendant, city of Seattle, the consideration for the second assignment being the release of the first; and that the written assignments of July 6th were made in fulfilment of the prior oral agreement. The court made the following findings of fact:

"II.
"That in January, 1937 plaintiff loaned to said H. A. Bechtel & Son a sum of money in excess of $2,000, which indebtedness was evidenced by promissory notes which matured in March, 1937.

"III.

"That said H. A. Bechtel & Son have never paid said indebtedness, nor any part thereof to plaintiff and said sum is still due and owing from said H. A. Bechtel & Son to plaintiff.

"IV.

"That on or about the 15th day of *May*, 1937, said H. A. Bechtel & Son executed to plaintiff an assignment in the amount of $1,000 of money to become due about June 10, 1937 from one N. Fiorito for sand and gravel furnished by said H. A. Bechtel & Son to said Fiorito.

"V.

"That on or about the 11th day of June, 1937, plaintiff released said H. A. Bechtel & Son from the said assignment in order that the said Bechtels might pay another creditor who was insisting upon payment.

"VI.

"That at the time of the release of the said assignment above mentioned, one of the Bechtels orally agreed that the said co-partnership composed of H. A. Bechtel & Son would assign a like amount to plaintiff from monies due from defendant to said H. A. Bechtel & Son.

"VII.

"That on or about the 6th day of July, 1937, said H. A. Bechtel & Son executed written assignments of money due from defendant to plaintiff in the amounts of $305.03, $440.65, and $63.25, which sums were to be applied on the above mentioned pre-existing debt then owing from H. A. Bechtel & Son to plaintiff.

"VIII.

"That on or about the 26th day of July, 1937, said H. A. Bechtel & Son assigned to Washington Machinery & Storage Company the sum of $665.55 due from defendant to said H. A. Bechtel & Son, which sum of money is now in defendant's possession and is not claimed by plaintiff.

"IX.

"That it was stipulated in open court by all parties to this cause that the said warrant which is payable to Washington Machinery & Storage Company was not involved in any manner whatsoever in this case.

"X.

"That thereafter defendant issued 3 warrants payable to H. A. Bechtel & Son bearing the numbers, on the dates and in the amounts as follows, to-wit:

"No. 2651     July 27, 1937     $305.04
"No. 2727     Aug. 25, 1937      438.40
"No. 94740  . Sep. 25, 1937       63.25

"XI.

"That defendant still has the said warrants and the sums of money in its possession and is awaiting the direction of this court as to what disposition to make thereof.

"XII.

"That warrant No. 2651 was in payment of sand and gravel delivered during the latter part of June and the early part of July, 1937. That warrant No. 2727 was in payment of sand and gravel delivered during the month of July, 1937 and warrant No. 94740 was in payment of sand and gravel delivered during August, 1937.

"XIII.

"That Arthur Charles Bechtel was, in the District Court of the United States for the Western District of Washington, northern division, on the 27th day of September, 1937, adjudicated bankrupt in cause No. 34684; that H. A. Bechtel was in the same court, on the 28th day of September, 1937, adjudicated bankrupt in cause No. 34687; and that Arthur Charles Bechtel and H. A. Bechtel, as co-partners, who have been doing business under the firm name and style of H. A. Bechtel & Son were, on the 15th day of October, 1937, in cause No. 34709, in said court, adjudged to be bankrupt.

"XIV.

"That the three above mentioned bankruptcy causes have been consolidated for administration and this Intervenor was, on the 4th day of November, 1937, duly appointed Trustee of the above three bankrupt estates and thereafter qualified as such trustee and ever since has been and is now the duly qualified and acting Trustee of said bankrupt estates. That the intervenor has been empowered and directed by the

said bankruptcy court to bring this action herein and to file his complaint in intervention.

"XV.

"That intervenor, as such trustee, has in his possession insufficient assets to pay all of the creditors of said bankrupts in full.

"XVI.

"That at the time of the execution of said three above described *written* assignments by H. A. Bechtel & Son to plaintiff the liabilities of said H. A. Bechtel and Arthur Charles Bechtel as such co-partners were greater than their assets and the effect of the enforcement of said assignments is to enable plaintiff to obtain a greater percentage of his debt than any other such creditor of the same class, to-wit: common creditors, and plaintiff, at the time of receiving said assignments had reasonable cause to believe that the enforcement of said assignments would effect a preference."

From these findings, the court concluded that the assignments by the bankrupt partnership to the plaintiff constituted a voidable preference, and that the intervening trustee was entitled to receive the assigned fund and the warrants representing it from the city. A judgment was accordingly entered ordering the city to surrender the warrants in controversy to the trustee; the plaintiff appealed from the judgment.

As no statement of facts has been filed, the question is whether the findings sustain the judgment. The written assignments were made within the four-month period preceding adjudication of bankruptcy and, as the court found, at a time when the appellant had reasonable cause to believe that Bechtel & Son were insolvent. It cannot, therefore, be questioned that, if the appellant's right to the fund rests upon the written assignments alone, the judgment of the trial court is correct.

But the appellant contends that the oral agreement made June 11th, some days before the commencement

of the four-month period, effected an equitable assignment which was perfected by the written assignments of July 6th. It is the contention of the respondent that there was no present transfer by the oral agreement of any interest in, or control over, any fund in possession of the city, and that the agreement amounted to no more than a promise to pay out of a particular fund as and when available.

The trial court based its decision largely upon our holding in *Nickerson v. Hollet,* 149 Wash. 646, 272 Pac. 53, where we said:

"The primary and controlling question is one of fact. It is admitted that there was no written or legal assignment of the claim to the appellants, but it is contended that the facts warrant a holding that there was an equitable assignment.

"The law as to what constitutes an equitable assignment is not in doubt, and is well stated as follows:

" 'In order to work an equitable assignment there must be an absolute appropriation by the assignor of the debt or fund sought to be assigned to the use of the assignee. The intention of the assignor must be to transfer a present interest in the debt or fund or subject matter; if this is done the transaction is an assignment; otherwise not.' 5 C. J. 909.

" 'The assignor of a chose in action must part with the power of control over the thing assigned; if he retains control it is fatal to the claim of the assignee.' 5 C. J. 912.

"See, also, *Hossack v. Graham,* 20 Wash. 184, 55 Pac. 36.

"While the evidence is not free from conflict, yet it rather clearly appears that the assignor did not part with control over the account in question, and that the assignees did not even assume to exercise control over it until after the written assignment had been made to the bank, and that no present interest passed to them. The trial court so found, and further found that there was here nothing more than an expressed intention to pay out of a particular fund."

In *Hossack v. Graham,* cited above, the court quotes as follows from 3 Pomeroy's Equity Jurisprudence (4th ed.), 3087, § 1284 (note):

" 'The order on a future fund which thus operates as an equitable assignment should be carefully distinguished from a *mere promise* to appropriate an existing or future fund in discharge of an obligation, or a mere promise to give an order on a fund, and the like.' "

We agree with the trial court that the principles announced in *Nickerson v. Hollet, supra,* are controlling in the present case.

It appears from the findings that the sand and gravel, for which the city became indebted to Bechtel & Son, was delivered in the latter part of June and during the months of July and August. The fund was not in existence June 11th, when the oral promise was made. While it is true that a fund to come into existence in the future may be assigned by parol agreement, there must be a transfer of present interest in the fund and an absolute appropriation by the assignor to the use of the assignee. The elements requisite for an equitable assignment are not present in the agreement of June 11th. The agreement was not an assignment, but a promise to assign in the future a fund as it became available. That the parties themselves did not consider that Bechtel & Son had parted with control of the fund is evidenced by the fact found by the court that the partnership, by a later assignment in writing, transferred a part of the fund owing by the city to the Washington Machinery & Storage Company.

*In re Great Western Mfg. Co.,* 152 Fed. 123, the circuit court of appeals, eighth circuit, in an opinion written by Judge Sanborn, states the rule in bankruptcy:

"An agreement to mortgage or to transfer is not a mortgage or a transfer. The title remains in the owner

unincumbered by the mortgage until the mortgage or transfer is effected. When the agreement is made before, and the mortgage or transfer within, the four months, the title stands unincumbered by the latter at the commencement of the four months, and the proceeds of that title are pledged under the bankruptcy law for the benefit of all the creditors pro rata. Any subsequent mortgage or transfer withdraws that title or a portion of its value from these creditors, and a just and fair interpretation and execution of the act demands that such a mortgage or transfer should be adjudged voidable if it is otherwise so, and that the mortgagee or transferee should be remitted to his original agreement. In this way the property at the commencement of the four months and its value may be preserved for the general creditors, and the mortgagee or transferee may retain every lawful advantage his earlier contract confers upon him. Any other course of decision opens a new and enticing way to secure preferences, nullifies every provision of the law to prevent them, and invites fraud and perjury."

The appellant cites *Terhune v. Weise,* 132 Wash. 208, 231 Pac. 954, and *Horchover v. Pacific Marine Supply Co.,* 171 Wash. 330, 17 P. (2d) 915, in support of his contention that the oral agreement of June 11th constituted an equitable assignment of moneys thereafter to become due to Bechtel & Son. We do not find these cases in point.

The case of *Terhune v. Weise* involved the application of the trust fund doctrine. A contract had been entered into to make advances to a corporation for the purpose of enabling it to carry on its business upon the security of the company's lien rights and the assignment of sixty per cent of its accounts receivable. Holding that the contract was not voidable as a depletion of the corporation's assets, the court said:

"This court, in *Lloyd v. Sichler,* 94 Wash. 611, 162 Pac. 979, recognized the right of a creditor, whose

transaction with the company did not modify or change the relation of the parties to the disadvantage of other creditors, to make such an arrangement. In such cases, the trust fund is in no way depleted, the assets of the company are not lessened but are merely changed in character; and, in the instant case, in place of accounts collectible under a contract, the company received cash for which it was able to pay for the labor of its workmen and persons who had furnished materials and supplies. As a matter of fact, by the contract the assets of the company were preserved in a great deal better condition than they would otherwise have been."

In *Horchover v. Pacific Marine Supply Co.*, a trustee in bankruptcy sued to recover money paid out by the bankrupt, as being a voidable preference. The payment was made to a company which had furnished supplies to the bankrupt salmon packing company in consideration of a credit of seventy-five cents per case as the salmon was received and bank loans made against it. Holding the agreement not one creating a voidable preference, the court said:

"The supplies furnished and credit extended by respondent to the Packing Co. went to increase the assets of the latter. Without such supplies and credit, the fund from which respondent was paid would never have come into being. Respondent was merely reimbursed from a fund which it helped to create by making it possible for the Packing Co. to proceed with its 1930 operations."

In the present case, the release by appellant of his right under the Fiorito assignment did not increase the assets of Bechtel & Son or in any way help to create the fund here in controversy. The appellant released to Bechtel & Son an assignment taken to secure a preexisting debt in order that they might satisfy the demands of another pressing creditor. The release

of the security in no way redounded to the advantage of the general creditors of the partnership.

The judgment is affirmed.

MAIN, HOLCOMB, BLAKE, and SIMPSON, JJ., concur.