### In re NATIONAL COTTONSEED PRODUCTS CORPORATION.

#### No. 11913.

District Court, W. D. Tennessee, W. D.

Aug. 12, 1940.

Lowell W. Taylor and Larry B. Creson, both of Memphis, Tenn., for trustee.

Miles & Miles, of Memphis, Tenn., for Reorganization Managers and Trustees and Bondholders' Protective Committee.

NEVIN, District Judge (sitting by designation).

It appears in these proceedings that certain properties were acquired by the National Cottonseed Products Corporation after the execution and registration of the First and Refunding mortgage dated July 1, 1926, and new mortgages were given expressly covering that after acquired property.

It further appears that the National Cottonseed Products Corporation acquired certain other properties which it owned on the date of bankruptcy, but which have not been conveyed or subjected to the lien of the mortgage by the execution and registration of subsequent mortgages.

The controversy here is confined to the properties which were not covered by subsequent mortgages.

The record shows that on October 6, 1939, the following statements were made in open court:

"Mr. Lowell Taylor: * * * Mr. Miles and I have a matter that we could take up with your Honor. I take it no one else is interested in it.

"Mr. Lovick P. Miles: If your Honor please, the debtor executor has read the mortgage which of course specifically described certain properties. By order of the Court those properties were ordered transferred to the Mid-South Cotton Oil Company, a corporation organized under the direction of the Court for the benefit of the bondholders. There has been no con-troversy between the Trustee and the representative of the bondholders as to the property specifically described in the mortgage, or as to property subjected to the mortgage by supplemental trust deeds. However, there are a number of pieces of property owned by the company which the bondholders claim passed to them under what is called the "after acquired" clause of the mortgage. The Trustee contends to the contrary."

The question here presented then is whether the Trustee in Bankruptcy takes the title to the real properties of the bankrupt, which were acquired subsequent to the execution and registration of the First and Refunding Mortgage, dated as of July 1, 1926, or whether those after acquired properties are encumbered by the mortgage and are to be subjected exclusively to the claims of bondholders.

The mortgage in question contains, inter alia, the following provisions (pp. 53, 54):

"Also and together with all buildings and improvements now or hereafter constructed or erected on the aforesaid properties, described in granting clauses First to Fifth, both inclusive, or any part or parcel thereof and all appurtenances thereto, including all rights, ways, privileges, servitudes, easements, and advantages thereunto belonging or in anywise appertaining.

"All gins, mills, buildings, plants, factories, workshops, offices, warehouses, tenements and other houses, structures, improvements, fixtures, appliances, machinery, tools, parts, implements, equipment and apparatus now owned or hereafter acquired by the Company, whether or not herein particularly described, and the additions thereto and extensions thereof, it being hereby expressly agreed that any and all property covered by the foregoing description shall be construed as fixtures and appurtenances constituting part of the real property of the Company.

"All other real property, together with all buildings and improvements now owned or hereafter acquired by the Company and wheresoever situated, and also all rents, issues, revenues and income, present and future, of all of these properties in these granting clauses mentioned and of the Company. Together with all and singular the tenements, hereditaments and appurtenances whatsoever belonging or in anywise appertaining to all of the properties hereinbefore in these granting clauses mentioned, or any part thereof, with the reversion and

reversions, remainder and remainders, tolls, rents, revenues, issues, income, products and profits thereof, and all the estate, right, title, interest and claim whatsoever at law as well as in equity which the Company now has or may hereafter acquire in and to the aforesaid properties and every part and parcel thereof.

"It is hereby agreed that all the property acquired by the Company after the date hereof, which it is herein provided shall be covered by this mortgage, shall be as fully embraced within the lien hereof as if such property were now owned by the Company and was specifically described herein and conveyed hereby.

"Provided, that anything herein to the contrary notwithstanding, the lien of this mortgage shall not apply or be deemed to apply to any choses in action or to any materials or supplies, or to any raw materials, cash on hand or on deposit (except cash deposited with or held by the Sinking Fund Agent and/or the Trustees or either of them under some one or more of the provisions of this mortgage) or manufactured products or products in course of manufacture which ordinarily are the subject of sale or consumable in the usual course of business."

Counsel for the bondholders state that: "The contention of the reorganization managers and trustees provided for in the plan of reorganization, approved July 19, 1935, of the Bondholders Protective Committee and of Bank of Commerce & Trust Company and Thomas W. Vinton, Trustees in the First and Refunding Mortgage of the debtor, dated as of July 1, 1926, that all property acquired by the debtor or for the debtor subsequent to July 1, 1926, the date of its First and Refunding Mortgage, or the proceeds therefrom, now held by the debtor, or the Permanent Trustee herein, or any other party for the debtor or the Permanent Trustee herein, falling within the granting clauses of said mortgage, are subject to said mortgage and should be transferred by the holders thereof to the corporation to be organized in accord with the provisions of the plan of reorganization herein approved." Numerous authorities are cited in support of this contention.

It is agreed in the briefs that the question of the validity of the after-acquired clause in mortgages has arisen most frequently in construing railroad mortgages. In such cases the contention made on behalf of the bondholders has been generally upheld at least insofar as the after-acquired property was comprehended within the description in the mortgage. Central Trust Co. v. Kneeland, 138 U.S. 414, 11 S.Ct. 357, 34 L.Ed. 1014.

As pointed out by counsel for the trustee, there appears to be a sound reason for upholding such a provision in a railroad mortgage. A railroad mortgage usually contains a general description by which the company's line of railroad, roundhouses, switchyards, depots, etc., are conveyed. Subsequently acquired properties as a rule are adjuncts to and used in connection with the properties thus generally described and are easily identified. A different rule prevails where the after-acquired property is not an adjunct to the generally described property. Pardee v. Aldridge, 189 U.S. 429, 433, 23 S.Ct. 514, 47 L.Ed. 883.

It is conceded by the trustee (Br. p. 7) that an after-acquired provision in a mortgage is good, as to property described in the mortgage, to which the mortgagor did not at the time have title, but subsequently acquired it; that it is good as to improvements and fixtures placed upon the property described in the mortgage; and that as between the mortgagor and the mortgagee, it constitutes a binding obligation on the part of the mortgagor to give a mortgage on the subsequently acquired property, which can be specifically enforced and the mortgagor required to execute a mortgage to cover such after-acquired property.

The Trustee submits, however, that the after-acquired property provision in a mortgage does not have the effect of creating a legal lien upon the property but merely the effect of creating an inchoate right to a lien, and that while prior to 1910 the trustee would take the property subject to that inchoate right to a lien that since the 1910 amendment to the Bankruptcy Act the trustee takes the property with all the rights which a judgment creditor armed with an execution could have, and that he, therefore, now does not take it subject to an inchoate lien.

The 1910 amendment to the Bankruptcy Act added these words to Section 47, sub. a(2), 11 U.S.C.A. § 75, sub. a(2): "and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with

all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

Counsel for the trustee submit that prior to 1910 the Trustee stood in the shoes of the bankrupt, took no better title than the bankrupt had, took the property subject to all claims and equitable liens which could have been enforced against the bankrupt, and was subject to all estoppels by which the bankrupt was bound, whereas the amendment of 1910, which gives the Trustee in Bankruptcy the rights of an attaching creditor or of a judgment creditor with a lien, has the effect of defeating an inchoate lien, if bankruptcy intervenes before the mortgagee takes possession or takes a mortgage specifically describing the property and records it.

Upon a consideration of the question here presented and the applicable law, the court is of opinion that counsel for the trustee are correct in their contention, and that the properties in question owned by the National Cottonseed Products Corporation did not pass to the bondholders under the "after-acquired" clause of the mortgage. The title to these properties, on the contrary, is in the trustee in bankruptcy. Hayes v. Gibson, 3 Cir., 279 F. 812, 813, 814, 22 A.L.R. 1372; Penn Lumber Co. v. Wilson, 4 Cir., 26 F.2d 893, 895; Corney v. Saltzman, 2 Cir., 22 F.2d 268; The Fort Orange, D. C., 5 F.Supp. 833, 844.

Counsel may prepare and submit an order in accordance with the views of the court as herein expressed.